HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROTECH MINERALS, INC., a
California Corporation, and CHUL LIM
CHOE, an individual

                Petitioners/

                Counter-
                Defendants,

vs.

TERRY SUZUKI,

                Respondent/
                Counter-Plaintiff

No. 2:20-cv-00969-TSZ

RESPONDENT TERRY SUZUKI'S
OPPOSITION TO PETITION TO VACATE
ARBITRATION AWARD
AND
CROSS-MOTION TO CONFIRM
ARBITRATION AWARD AND FOR AN
AWARD OF ATTORNEY FEES AND
COSTS

NOTE ON MOTION CALENDAR:
October 2, 2020

## I.   INTRODUCTION AND RELIEF REQUESTED

Suzuki moves for an order confirming an arbitration award in his favor and for denial of Choe's motion to vacate that award. Because Choe's motion is based on factual disagreements with the arbitrator and the Federal Arbitration Act does not allow this Court to review the arbitrator's factual findings, this Court must deny Choe's motion and confirm the award.[1]

## II.   FACTS

**The Arbitrator found that Suzuki proved his case.**

On April 18, 2020, Arbitrator Thomas McPhee entered a Corrected Final Award in the case of *Terry Suzuki v. Protech Minerals, Inc., and Chul Lim Choe*, JAMS Arbitration No. 1160021925, incorporating several earlier interim awards and decisions.[2] In the arbitration, Suzuki sought to enforce the payment terms of a Consulting Agreement he had with Choe and Suzuki "proved the elements of his claim."[3] Because Choe does not challenge the extensive findings underlying that decision, they will not be discussed in detail.

**Choe failed to prove his affirmative defense.**

Choe asserted "a laundry list of affirmative defenses," Including that Suzuki was prohibiting by California law from being paid under the Consulting Agreement because

---

[1] This brief encompasses both Suzuki's motion to confirm and Suzuki's opposition to Choe's 15-page petition to vacate. Dkt. 1.
[2] Dkt. 1-1 at Exs. E, H, I, and J and Declaration of Jack M. Lovejoy, Ex. 1.
[3] Id. at 82, 84.

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

he did not hold a real estate or securities license.[4] Choe "failed to prove any of the affirmative defenses."[5]

In 2015, Choe was in the process of offering PMI for sale. A man named Pastor Shin was helping Choe find a buyer. Pastor Shin repeatedly asked Suzuki to help before Suzuki agreed to "scout for a potential buyer." Suzuki contacted Mike Mattox in March 2016. Mattox was interested but insisted that the sale include an agreement with an operator who would run the mining business after the asset sale. On March 15, Choe, Pastor Shin, and Suzuki agreed that Suzuki would work to become the on-site manager Mattox demanded and discussed Suzuki's compensation. After March 15 Suzuki was a consultant who spent time and resources in California learning the PMI business. His activities were

> not part of the services provided by a licensed real estate broker in a real estate transaction. Those activities far exceed services customarily expected of a real estate broker, but are consistent with the agreement [the Consulting Agreement] that he would provide assistance in connection with a sale of the assets of PM.

Suzuki's assistance was a "key part of Mattox's interest," specifically his interest in having "an on-site manager."[6]

Through April and May, Suzuki was "messenger and scrivener" for Mattox and Choe, but Mattox and Choe each "made clear that Suzuki did not advise him or negotiate on his behalf." At the arbitration Choe "professed" to believe Suzuki

---

[4] Id. at 82.
[5] Id. at 84.
[6] See Id. at 87-88 for all statements in this paragraph.

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 2
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1    represented Mattox. But Choe was the least credible witness and Mr. McPhee inferred

2    that Choe's "professed belief" may be explained by one stray use of the word

3    "negotiated" in Suzuki's notes.[7] Mr. McPhee did *not* find that Suzuki represented

4    Mattox, nor that he negotiated either side of the transaction.

5           By May 8, 2016, Choe was represented by an attorney who drafted the

6    framework for the final term sheet between Choe/PMI and Mattox. In June, Choe's

7    attorney and Mattox agreed Suzuki had introduced the parties but was not representing

8    anyone.  Jennifer Choe also agreed that Suzuki did not represent Choe. Suzuki had no

9    role in the Letter of Intent between Choe and Mattox. Choe contended that the amount

10   of compensation promised to Suzuki in the Consulting Agreement suggested that

11   Suzuki was being paid as a real estate broker. Mr. McPhee rejected that contention

12   because it did not fit the facts.[8]

13          To avoid tax, Choe used the proceeds from Mattox to buy shares in a Delaware

14   Statutory Trust (DST) for purposes of a 1031 exchange. Choe testified the 1031 exchange

15   and the DST were both proposed and recommended by Suzuki. Mr. McPhee disagreed.

16   Choe was considering a 1031 exchange before Suzuki was involved. The DST became a

17   "part of the discussion" after Choe had already engaged with a securities broker, Dan

18   Uhm. Mr. Uhm explained the DST—Suzuki "did not have a speaking role in the

19   conversation"—and Mr. Uhm brokered the DST transaction. Suzuki had no role in the

20   ────────────────────

21   [7] Id. at 83, 85, fn. 5, and 86 for all statements in this paragraph.
     [8] See Id. at 86, fn. 6, and 88 for all statements in this paragraph. Jennifer Choe was Choe's colleague and daughter.
22   Mr. McPhee found her highly credible, though her testimony supported Suzuki as much as Choe. Id. at 83.

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 3
[2:20-cv-00969-TSZ]

1031 DST except to introduce the idea. Suzuki did not offer advice on how to structure the DST.[9] Suzuki "played a passive role."[10]

Having made these and other factual findings, Mr. McPhee addressed Choe's claim that Suzuki was required to have a securities or real estate license. Mr. McPhee summarized his findings that Suzuki was originally asked to help find a buyer, then began working to become a manager (which was "not broker services") and introduced Mr. Uhm (which was "not broker services"). While Suzuki's role as courier and his hiring at one point of an attorney to be scrivener were "akin" to some of what a real estate broker might do, Suzuki was not representing anyone, was acting in his own interest, was not a fiduciary, and did not negotiate for anyone. And the DST purchse was "between Choe and Uhm."[11] Based on these facts, Mr. McPhee found that Suzuki did not engage in activities that required a real estate or securities license. Mr. McPhee also found that Suzuki was not a securities broker under Cal. Corp. Code § 25004(5) and that the securities aspect of the Mattox transaction was incidental to the deal as a whole and was negotiated by attorneys.[12]

**Choe repeated his affirmative defense in a motion for reconsideration, which Mr. McPhee denied.**

Choe moved for reconsideration. He argued that Suzuki did recommend the DST transaction and did engage in brokering activities in the Mattox transaction.[13] Mr.

---

[9] See Id. at 88 for all statements in this paragraph.
[10] Id. at 106.
[11] See Id. at 90-91 for all statements in this paragraph.
[12] See Dkt. 1-1 at 91 for all statements in this paragraph.
[13] Dkt. 1-1 95-97 (Exhibit F).

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 4
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1    McPhee explained that based on the evidence he "made findings different than urged

2    by Choe" and affirmed his own findings.[14] Choe also argued that Mr. McPhee

3    manifestly disregarded relevant law requiring Suzuki to have either a real estate or

4    securities license, particularly the law requiring a license for anyone who sells a

5    "business opportunity." Choe also made the related public policy argument now

6    featured in his motion to vacate.[15] Mr. McPhee acknowledged his previous

7    consideration and reconsideration of the authorities cited by Choe. He determined that

8    whether the Mattox transaction is viewed as a sale of real estate sale, a business

9    opportunity, or securities, the result is the same because Suzuki was not a broker. With

10   respect to Choe's DST purchase, Mc. McPhee affirmed his factual findings that Suzuki,

11   after introducing Choe and Mr. Uhm, Suzuki was passive and Uhm was the broker."[16]

12           **Suzuki requests fees and costs for this proceeding.**

13           The Consulting Agreement allows for entry of judgment on an arbitration award

14   and requires an award of prevailing party fees and costs.[17]

15                              **III.  ISSUE PRESENTED**

16           This Court must not second guess Mr. McPhee's factual findings, but that is

17   exactly what Mr. Choe asks it to do. Should the Court deny Mr. Choe's motion and

18   confirm the arbitration award?

19   _____

20   [14] Id. at 106 (Exhibit H).
     [15] Id. at 97-101 (Exhibit F).
     [16] Id. at 106-107.
21   [17] Dkt. 1-1 at 6 (Exhibit A) and at 91 (Item 4).

22

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 5
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

## IV. ARGUMENT AND AUTHORITIES

**A. This Court must confirm the arbitration award unless Choe shows that the award "manifestly disregarded the law" or was "completely irrational."**

The Federal Arbitration Act (FAA) provides that if a party requests confirmation of an arbitration award a court "must grant such an order unless the award is vacated…as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Choe relies on only Section 10(a)(4), which allows vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Confirmation is required "even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003)(*citing French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir.1986)). "Even a serious error" is not sufficient to vacate an arbitration award. *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). Instead, Section 10(a)(4) only applies where an award is "completely irrational" or "manifestly disregards the law." *Id.* (*citing French,* 784 F.2d at 906; *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1059–60 (9th Cir.1991); *G.C. & K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1105–06 (9th Cir.2003)). Section 10(a)(4) "afford[s] an extremely limited review authority" for the district courts. *Id.* at 998.

**B. Choe has not demonstrated that Mr. McPhee manifestly disregarded the law regarding real estate brokers.**

A "real estate broker" is someone who for compensation from another:

Sells or offers to sell, buys or offers to buy, solicits prospective sellers or buyers of, solicits or obtains listings of, or negotiates the purchase, sale, or exchange of real property or a business opportunity.

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 6
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

Cal. Bus. & Prof. Code § 10131(a). A "real estate broker" is also someone who:

> issues or sells, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of securities.

Cal. Bus. & Prof. Code § 10131.3. A "busines opportunity" includes "the sale…of the business and goodwill of an existing business enterprise or opportunity." Cal. Bus. & Prof. Code § 10030. This includes the "transfer of the ownership of an entire ongoing business in corporate form whether by transfer of all the stock or all the assets. *All Points Traders, Inc. v. Barrington Assocs.*, 211 Cal. App. 3d 723, 731, 259 Cal. Rptr. 780, 784 (Ct. App. 1989).

Acting as a "finder" who introduces buyer and seller does not make one a real estate broker. *Stoll v. Mallory*, 173 Cal.App.2d 694, 699 (9159)(*citing Freeman v. Jergins*, 125 Cal.App.2d 536 (1954)). The difference between a finder and a real estate broker is that a finder does not negotiate the transaction. *See Freeman*, 125 Cal.App. 2d 536 (allowing a commission to the finder where the negotiation was left to the buyer and seller); *Lyons v. Stevenson*, 65 Cal.App.3d 595, 596, 135 Cal.Rptr. 457 (Ct. App. 1977)(allowing commission to a finder or "middleman"); *Anderson v. Thecher*, 76 Cal.App.2d 50 (1946)(a person whose duty is to bring people together is not an agent). Additionally, where a contract calls for some services that require a real estate license and some that do not, it is not appropriate to deny payment under the contract even if the party seeking payment does not have a rea estate broker license. *Venturi & Co. LLC v. Pac. Malibu Dev. Corp.*, 172 Cal. App. 4th 1417, 1422, 92 Cal. Rptr. 3d 123, 128 (2009).

Suzuki's Opposition to Petition to Vacate and Cross-Motion to Confirm Arbitration Award - 7

[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1    Choe's argument in this Court is that Suzuki acted as a real estate broker and

2    because he was not licensed as a broker, he cannot be paid. Choe's argument is

3    inadequate to demonstrate a manifest disregard of the law because it is based on a

4    factual disagreement with Mr. McPhee. The first factor that Choe alleges made Suzuki a

5    "broker" is that "the Arbitrator notes that Terry has stated that he negotiated with Choe

6    during the course of defining the terms of the asset sale." Motion at 10:15 (repeated

7    again at 10:22). That is not correct. Mr. McPhee mentioned a stray use of the word

8    "negotiated" in a note made by Suzuki to try to make sense of Choe's incredible

9    "professed belief" that Suzuki was representing Mattox.[18] Reading the Interim Award

10   as a whole, Mr. McPhee clearly and repeatedly found that Suzuki did not negotiate on

11   anyone's behalf. The next and only other factor that Choe believes makes Suzuki a

12   broker is that Mr. McPhee supposedly "concedes that Terry's activities in the PMI sale,

13   including acting as a courier of information between buyer and seller and hiring an

14   attorney to prepare term sheets, are the type that a real estate broker would perform."

15   Motion at 10:18. Again, this is a selective and misconstrued reading of the Interim

16   Award. The paragraph Choe's argument draws from states that while Suzuki's courier

17   tasks and his hiring of a scribe were "akin" to activities performed by a real estate

18   broker, but the bulk of his activities were explicitly "not broker services," his "activities

19

20   [18] Dkt. 1-1 at 86.

21

22

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 8
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1   did not create a fiduciary relationship," he was "acting in his own interest," and the

2   parties knew he was no one's negotiator.[19]

3       Choe makes it abundantly clear that his motion is actually based on a

4   disagreement with Mr. McPhee's factual findings by characterizing Mr. McPhee's

5   findings as "unfounded" (Motion at 10:20-25) and filing hundreds of pages of exhibits

6   that are not part of Mr. McPhee's findings. This Court must accept, and cannot review,

7   the arbitrator's findings. And based on those findings the Corrected Final Award is not

8   manifestly contrary to the law. To maintain the appearance of a legal, rather than a

9   factual challenge, Choe faults Mr. McPhee for not citing and analyzing more case law in

10  his Interim Award. Motion at 10:26-27. But Choe has not cited a single case that presents

11  facts like this one and comes to a different legal conclusion than Mr. McPhee. Hence,

12  there is no basis to find that Mr. McPhee made even a minor legal error.

13      Choe argues that Mr. McPhee ignored the definition of "business opportunity."

14  Motion at 11:1-9. This is untrue. The Decision on Reconsideration explicitly

15  acknowledged that Mr. McPhee had considered and reconsidered the law regarding

16  business opportunities and found that Suzuki simply did not broker the Mattox, no

17  matter how that transaction is characterized.[20]

18  ───────────────

19  [19] Dkt. 1-1 at 90-91.
    [20] Dkt. 1-1 at 106-107.

20

21

22

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**C. Choe has not demonstrated that Mr. McPhee manifestly disregarded the law regarding securities broker dealers.**

A "broker dealer" is a person "engaged in the business of effecting transactions in securities in [California] for the account of others or for his own account." Cal. Corp. Code § 25004. A broker dealer must have a securities license. § 25210. There are several exceptions to this licensing requirement. A license is not required for a person who "has no place of business in this state if that person effects transactions in this state exclusively with (A) the issuers of the securities involved in the transactions of (B) other broker dealers." Cal. Corp. Code § 25004(5).[21] A license is not required where the sale of securities is incidental to a sale of other property. *Weber v. Jorgenson*, 16 Cal.App.3d 74, 78, 93 Cal.Rptr. 668 (1971). The seller in *Weber* refused to pay a finder's commission for the sale of resort properties because the sale took the form of a sale of stock in a holding company and the finder did not have a securities license. The Court demanded the commission be paid, noting that the rules denying payment to parties to purportedly illegal contracts are subject to a wide range of exceptions. "In each case, the grant or refusal of relief depends upon the public interest involved in the particular kind of illegality, including the policy of the transgressed law." *Id.*, at 85. In *Weber*, the sale of stock was simply incident to the property sale. Additionally, it was a single, isolated transaction, so enforcing the securities license requirement would have been inconsistent with the statute defining "broker" as one engaged "in the *business* of

---

[21] A securities license is not required for a person who "has no place of business in this state if that person effects transactions in this state exclusively with (A) the issuers of the securities involved in the transactions of (B) other broker dealers."

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 10

[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1    selling, offering for sale, or negotiating for the sale of…any security." *Id*. (emphasis in

2    original). Further, the stock sale was handled by an attorney, so the public policy of

3    supplying buyers and sellers with adequate representation had not been offended.

4         Choe alleges Suzuki acted as broker dealer in the Choe/Mattox transaction

5    because Choe obtained an interest in the LLC that became the owner of the purchased

6    assets and that Suzuki brokered Choe's purchase of the DST shares.

7         With respect to the Choe/Mattox sale, *Weber* is highly instructive. As in *Weber*,

8    the transaction was for assets. The transfer of a minority share in an LLC was incidental.

9    *See also Lyons*, 65 Cal. App. 3d at 596. The Choe/Mattox transaction was also an isolated

10   transaction and the transfer of securities was handled by attorneys. Suzuki didn't

11   negotiate the deal. And Mr. McPhee also found Suzuki fit the exception in § 25004(5).

12   Given these facts, which cannot be second-guessed, Mr. McPhee had ample reason to

13   determine that Suzuki was not a securities broker dealer in the Choe/Mattox asset sale.

14        As for Choe's purchase of DST shares, Choe says Mr. McPhee "acknowledge[ed]

15   that Terry acted as an active finder of investor Choe in the DST transaction, and that

16   Terry advised Choe to purchase the Inland Texas Healthcare DST." Motion at 12:7-8.

17   That is simply not true, Mr. McPhee made no such findings. He found that the idea of

18   purchasing DST shares came up in Choe's second meeting with his broker Dan Uhm

19   and, Suzuki was "passive" with respect to the transaction, and Uhm was the broker.

20   Choe's motion tries to nit-pick the Interim Award for inconsistencies over Suzuki's

21   proximity to Choe's purchase of share in a DST. Motion at 12:14-13:2. But this is more

22   factual quibbling that this Court has no authority to entertain.

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 11
[2:20-cv-00969-TSZ]

1

2

### D. There is no clear authority for application of a public policy exception to the FAA's demand for confirmation of arbitration awards.

Choe's motion says there is also an exception to the FAA's demand for confirmation of arbitration awards where an award violates public policy. Motion at 8 (*citing Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200 (9th Cir. 1989)(which did not apply the public policy exception)). But the "public policy exception" was created under the Labor Management Relations Act (LMRA), which allows for district court review of labor arbitrations, not under the FAA. *See Golden v. O'Melveny & Myers LLP*, 2019 WL 5693760 at *9 (C.D. Cal. Nov. 1, 2019). The FAA is a "different statutory scheme" than the LMRA. *Id*. In 2008, the Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). When confronted with another judicially-created exception to the FAA in 2019, the Supreme Court noted that Congress designed Section 10 of the FAA "in a specific way, and it is not our proper role to redesign the statute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Given this authority, it is unclear whether the "public policy exception" is available in the Ninth Circuit in cases under the FAA. *Golden*, at *9.

### E. The "Public Policy Exception" is extremely narrow.

The "public policy exception" requires the party seeking vacatur to demonstrate that: "(1) an explicit, well defined, and dominant policy exists and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." *Golden*, at

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 12
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

*9(citing *Fund Raising, Inc. v. Alaskans for Clean Water, Inc.*, 2012 WL 2456255, at *2 (C.D. Cal. June 26, 2012)). In considering a public policy argument, a court cannot revisit the factual findings of the arbitrator. *Stead*, 886 F.2d at 1211; *Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 823 (9th Cir. 2008)("The public policy inquiry proceeds by taking the facts as found by the arbitrator"). In *DeMartini v. Johns*, 693 F.App'x 534 (9th Cir. 2017), cited by Choe, the party who lost at arbitration argued that the award should be vacated because the prevailing party had engaged in perjury and the public policy against perjury was clear. The Court agreed that there is a public policy against perjury, but found that it would have to overrule the arbitrator's factual findings to find that perjury occurred, which it had no authority to do.

**F. Choe's attempt to demonstrate a public policy violation fails for the same reasons as his arguments about manifest disregard of the law.**

Choe's argument is that Mr. McPhee's award violates a public policy against paying unlicensed people for work that requires a securities broker dealer license or a real estate broker license. This argument requires Choe to prove that there is an explicit, well defined, and dominant policy against paying unlicensed people. This he cannot do given the many exceptions to the general rules requiring licensing for people involved in real estate, business opportunity, and securities transactions. *See* authorities cited above including *Stoll*; *Freeman*; *Lyons*; *Venturi*; *Anderson*; Cal. Bus & Prof. Code § 25004(5); and *Weber*.

Even if Choe could demonstrate a sufficient public policy, he would also have to demonstrate that Suzuki did in fact act engage in unlicensed brokering of some kind.

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 13
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1   This he cannot do without asking the Court to overturn Mr. McPhee's factual findings.

2   Hence, he argument fails for the same reason as the public policy argument failed in

3   *DeMartini*.

4       **G.      Suzuki is entitled to an award of attorney fees and costs.**

5       Suzuki is seeking an order from this Court confirming Mr. McPhee's Final

6   Award. Because the parties' Consulting Agreement requires an award of prevailing

7   party attorney fees and costs and because this lawsuit has materially increased Suzuki's

8   fees and costs, Suzuki is entitled to an award of fees and costs from this Court.

9                          **V.   CONCLUSION**

10      Suzuki respectfully requests an order (1) confirming Mr. McPhee's Corrected

11  Final Award, (2) denying Choe's motion to vacate, (3) declaring Suzuki the prevailing

12  party in this action, and (4) awarding him his fees and costs for this action in an amount

13  to be established. Suzuki will then promptly file a fee petition so this Court can enter a

14  final judgment disposing of this case.

15      Dated August 21, 2020.

16                          CFL LAW GROUP, LLP

17                          By: */s/ Jack M. Lovejoy*

18                          Jack M. Lovejoy, WSBA No. 36962
                            CFL LAW GROUP, LLP
19                          1001 Fourth Avenue, Suite 3900
                            Seattle, Washington 98154
20                          (206) 292-8800 phone
                            E-mail: jlovejoy@corrcronin.com
21
                            *Attorney for Respondent/Counter-Plaintiff Terry Suzuki*
22

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 14
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 15

[2:20-cv-00969-TSZ]

1

**CERTIFICATE OF SERVICE**

2

The undersigned certifies that on August 21, 2020, I electronically filed the

3

foregoing with Clerk of the Court utilizing the ECF Court's system which will send

4

notification of filings to all registered e-service recipients.

5

I declare under penalty of perjury under the laws of the State of Washington and

6

the United States of America that the foregoing is true and correct.

7

DATED at Port Orchard, Washington, on August 21, 2020.

8

9

By: s/ Irina Kinyon

10

Irina Kinyon, PP
Paralegal
ikinyon@corrcronin.com

11

12

13

14

15

16

17

18

19

20

21

22

Suzuki's Opposition to Petition to Vacate and Cross-Motion to
Confirm Arbitration Award - 16
[2:20-cv-00969-TSZ]

CFL LAW GROUP, LLP
1001 FOURTH AVENUE, SUITE 3900
SEATTLE, WASHINGTON 98154
(206) 292-8800